UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AARON TREJO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 21-cv-10978-ADB |
| | * | |
| SEA HARVEST, INC., | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

In this action, Plaintiff Aaron Trejo alleges that Defendant Sea Harvest, Inc. ("Sea Harvest") is liable for injuries that he sustained while working on Sea Harvest's commercial fishing vessel, F/V Atlantic Bounty (the "Atlantic Bounty" or the "Vessel"). [ECF No. 1 at 2 ("Compl.")]. Currently before the Court is Sea Harvest's motion to transfer or, in the alternative, to dismiss in favor of arbitration. [ECF No. 6]. For the reasons set forth below, Sea Harvest's motion is GRANTED, and the case is DISMISSED without prejudice.

**I.    BACKGROUND**

    **A.    Factual Background**

The Court draws the following facts from the Complaint and the exhibits to Sea Harvest's motion. See Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018); Cervantes v. CRST Int'l, Inc., No. 20-cv-10106, 2020 WL 4506169, at *1 (D. Mass. Aug. 5, 2020).

Mr. Trejo is a Virginia resident. [Compl. ¶ 2]. Sea Harvest is a New Jersey corporation with its principal place of business in Cape May, New Jersey. [Id. ¶ 3]. Sea Harvest owns, operates, and controls the Atlantic Bounty. [Id. ¶ 7]. Mr. Trejo was a crewmember on the

1

Atlantic Bounty. [Id.]. On or about August 9, 2020, while working on the Vessel, Mr. Trejo was injured when he was forced to carry and heave a heavy wire cable without assistance. [Id. ¶ 9].

The employment contract that Mr. Trejo signed in connection with his voyage contains the following arbitration provision:

> **Arbitration: I understand and agree that <u>any</u> dispute, claim or controversy arising out of my work as a crewmember, including but not limited to statutory Jones Act claims, negligence, unseaworthiness, maintenance and cure, and wage claims, and whether such claim or controversy be brought against the vessel, vessel owner[s] or vessel operator/employer, or any combination of them; or disputes relating to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this arbitration clause, shall be determined by one arbitrator sitting in Philadelphia, Pennsylvania.**
>
> **The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. If this agreement to arbitrate is determined to be exempt from enforcement under the Federal Arbitration Act, the laws of the State of New York shall be applied in determining the validity and enforceability of this agreement.**
>
> **ARBITRATION SHALL BE MY EXCLUSIVE REMEDY AND I UNDERSTAND THAT I GIVE UP MY RIGHT TO SUE. I FURTHER UNDERSTAND AND AGREE THAT I GIVE UP MY RIGHT TO SELECT THE VENUE FOR ANY CLAIM OR CONTROVERSY AND THAT I GIVE UP MY RIGHT TO TRIAL BY JUDGE OR JURY FOR ANY AND ALL CLAIMS, INCLUDING BUT NOT LIMITED TO STATUTORY JONES ACT, NEGLIGENCE, MAINTENANCE AND CURE, UNSEAWORTHINESS, AND WAGES.**
>
> **The fee for arbitration, except the cost of any dispute concerning the enforceability of this Agreement or appeal of the arbitrator's decision, shall be borne by the Vessel's owner or Operator/employer as they may amongst themselves decide. Each party shall be responsible for their own attorney fees and costs and lay and expert witness fees and costs, unless contrary to law. Judgment on the Arbitration Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction; however, each party shall bear its own costs in pursuing such remedies.**
>
> **I have read, understand and agree to the terms of the above Agreement. By signing below, I acknowledge that I have been given time to review this Agreement, that I have read (or otherwise understand) and agree to its terms, and that I make this Agreement freely and voluntarily.**

[ECF No. 7-4 at 70].

### B. Procedural Background

Mr. Trejo filed his complaint on June 10, 2021, asserting claims for negligence, [Compl. ¶¶ 11–12], vessel unseaworthiness, [id. ¶¶ 13–14], and maintenance and cure, [id. ¶¶ 15–19]. On July 12, 2021, Sea Harvest moved to transfer the case to the United States District Court for the District of New Jersey or, in the alternative, to dismiss and compel arbitration. [ECF No. 6]. Mr. Trejo opposed on August 2, 2021, [ECF No. 15], and Sea Harvest replied on August 31, 2021, [ECF No. 18].

## II. DISCUSSION

Sea Harvest makes two arguments. First, it asserts that because Massachusetts is an improper venue, the case should be transferred to the United States District Court for the District of New Jersey. [ECF No. 7 at 2–3]. In the alternative, it maintains that because Mr. Trejo agreed to arbitrate his claims against Sea Harvest, the case should be dismissed in favor of arbitration. [Id. at 3–13]. The Court begins with the arbitration issue, which is dispositive.

Mr. Trejo does not dispute that his employment contract with Sea Harvest contains an arbitration provision. See [ECF No. 15 at 7]. Further, the parties agree that the Federal Arbitration Act ("FAA") does not apply to that contract. [ECF No. 7 at 5 ("It is not disputed that as a Jones Act seaman, the contract is not enforceable under the [FAA]."); ECF No. 15 at 8 ("Thus, the arbitration agreement in question is not enforceable by this Court under the FAA.")]; see Waithaka v. Amazon.com, Inc. (Waithaka I), 404 F. Supp. 3d 335, 340 (D. Mass. 2019) ("The FAA contains an exception for 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'" (quoting 9 U.S.C. § 1)) aff'd, 966 F.3d 10 (1st Cir. 2020). Nonetheless, the fact that an employment contract with

3

an arbitration provision is not covered by the FAA does not necessarily mean that the arbitration provision cannot be enforced.[1]  Rather, it means only that enforceability is a matter of state, rather than federal, law.  See Waithaka I, 404 F. Supp. 3d at 343–44 ("Section 1 [of the FAA] does not, however, in any way address the enforceability of employment contracts exempt from the FAA.  It simply excludes these contracts from FAA coverage entirely.  Accordingly, [w]hen a contract with an arbitration provision falls beyond the reach of the FAA, courts look to state law [to] decide whether arbitration should be compelled nonetheless." (final alteration added) (citation and internal quotation marks omitted)); Palcko v. Airborne Express, Inc., 372 F.3d 588, 596 (3d Cir. 2004) ("Applying the Supreme Court's precedent, we conclude that the District Court erred in holding that [plaintiff's] exemption status under section 1 of the FAA preempts the enforcement of the arbitration agreement under Washington state law.").

     Mr. Trejo argues that the arbitration provision is unenforceable under state law for various reasons.[2]  See [ECF No. 15 at 8–17].  Sea Harvest, on the other hand, maintains that the provision should be enforced.  See [ECF No. 7 at 5–13].  Both parties, however, have ignored a key threshold issue: who should determine whether the arbitration agreement is enforceable.  Because the Court finds that the parties have clearly and unmistakably delegated that question to the arbitrator, the case will be dismissed without prejudice so that an arbitrator can determine whether Mr. Trejo's claims are properly subject to arbitration.

---

[1] In fact, the arbitration provision here specifically contemplates a determination that it is exempt from enforcement under the FAA.  See [ECF No. 7-4 at 70 ("If this agreement to arbitrate is determined to be exempt from enforcement under the [FAA] . . . .")].

[2] For instance, he maintains that enforcing the arbitration agreement against him would be "unconscionable because it [would] prohibit[] [him], an American seaman, from pursuing his federal Jones Act claim (and related claims for vessel unseaworthiness and maintenance and cure) in court before a jury."  [ECF No. 15 at 12].

The parties seem to agree that New York law governs the arbitration agreement. See [ECF No. 7 at 5; ECF No. 15 at 8]; see also [ECF No. 7-4 at 70 ("If this agreement to arbitrate is determined to be exempt from enforcement under the [FAA], the laws of the State of New York shall be applied in determining the validity and enforceability of this agreement.")]. Under New York law, if the parties to an arbitration agreement clearly and unmistakably delegate the question of arbitrability to an arbitrator, a court must respect that decision. See Smith Barney Shearson Inc. v. Sacharow, 689 N.E.2d 884, 887 (N.Y. 1997) ("An important legal and practical exception has evolved which recognizes, respects and enforces a commitment by the parties, nevertheless, to arbitrate even [the arbitrability] issue when they '*clearly and unmistakably [so] provide.*'" (second alteration in original) (quoting AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649 (1986))); Anima Grp., LLC v. Emerald Expositions, LLC, 138 N.Y.S.3d 858, 858 (N.Y. App. Div. 2021) (delegating arbitrability question in light of "the parties' clear and unmistakable intent to delegate the threshold arbitrability question to the AAA"); Revis v. Schwartz, 140 N.Y.S.3d 68, 70 (N.Y. App. Div. 2020) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. Under such circumstances and without more, a court possesses no authority to decide the arbitrability issue."); WN Partner, LLC v. Baltimore Orioles Ltd. P'ship, 112 N.Y.S.3d 68, 70 (N.Y. App. Div. 2019) (enforcing parties' agreement to arbitrate arbitrability where there was "clear and unmistakable intent to delegate"); Skyline Steel, LLC v. PilePro LLC, 33 N.Y.S.3d 201, 202 (N.Y. App. Div. 2016) (noting that arbitrators were to decide arbitrability where "[b]oth the arbitration clause and the JAMS rule incorporated therein confer on the arbitrators the power to resolve arbitrability"); cf. Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 121 (2d Cir.

2003) (noting that the test for determining whether parties have delegated the arbitrability issue is the same under New York law as it is under federal law).[3]

Here, the parties have demonstrated a clear and unmistakable intent to delegate the arbitrability question. As an initial matter, the arbitration provision itself provides that "disputes relating to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this arbitration clause, shall be determined by one arbitrator sitting in Philadelphia, Pennsylvania." [ECF No. 7-4 at 70]. The dispute here (i.e., whether Sea Harvest can compel Mr. Trejo to arbitrate his claims) is a "dispute[] relating to . . . the . . . enforcement" of Mr. Trejo's employment contract which goes to the "scope or applicability of [the employment contract's] arbitration clause." [Id.]. Further, the arbitration provision also notes that the arbitration will proceed pursuant to the JAMS Comprehensive Arbitration Rules and Procedures (the "JAMS Rules"). [Id.]. Under the JAMS Rules, "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the

---

[3] The Court acknowledges that some of these cases did not involve FAA-exempt contracts like the one at issue here. Nevertheless, nothing in these opinions suggests that whether a court must respect a clear and unmistakable delegation of the arbitrability question turns on whether the contract containing the arbitration agreement is covered by the FAA. Even if the FAA's exemption for seamen evidences a federal public policy disfavoring arbitration of seaman employment claims, it does not logically follow that the gateway arbitrability issue should be decided by a court notwithstanding a clear contractual delegation. Further, the general principles of New York arbitration law reinforce the conclusion that New York courts would respect a clear and unmistakable delegation of the arbitrability issue regardless of whether the contract containing the arbitration agreement is governed by the FAA. See Life Receivables Tr. v. Goshawk Syndicate 102 at Lloyd's, 888 N.Y.S.2d 458, 462 (N.Y. App. Div. 2009) (concurrence) (noting that "it is settled that the validity of an arbitration agreement is to be determined by the law applicable to contracts generally, public policy strongly favors arbitration, and New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration." (citations and internal quotation marks omitted)).

Arbitrator." JAMS, Comprehensive Arbitration Rules and Procedures, Rule 11(b) (2021). Together, the express delegation language in the contract and the incorporation of the JAMS rules establish that the parties intended that an arbitrator decide whether Mr. Trejo must arbitrate his claims. See Skyline Steel, 33 N.Y.S.3d at 202 (respecting delegation where "[b]oth the arbitration clause and the JAMS rule incorporated therein confer[red] on the arbitrators the power to resolve arbitrability"); see also Life Receivables Tr. v. Goshawk Syndicate 102 at Lloyd's, 888 N.Y.S.2d 458, 459 (N.Y. App. Div. 2009) (noting that incorporation of AAA rules was, alone, sufficient to require delegation of arbitrability issue). Accordingly, the Court must respect that intent.[4] Notably, because Mr. Trejo attacks the arbitration agreement as a whole, as

---

[4] Even though they appear to agree that New York law governs, the parties also address both New Jersey and Massachusetts law. See [ECF No. 7 at 6–11; ECF No. 15 at 8–10]. The Court need not engage in a choice-of-law analysis because the result here would be the same regardless of which state's law applies. Under New Jersey and Massachusetts law, where the contract evidences a clear and unmistakable intent to delegate arbitrability, a court must defer to the arbitrator on the issue of arbitrability. See Morgan v. Sanford Brown Inst., 137 A.3d 1168, 1172 (N.J. 2016) (noting that arbitrators decide arbitrability where the parties have clearly delegated that decision to the arbitrator); Strowbridge v. Freeman, No. A-4215-19, 2021 WL 1387887, at * 4 (N.J. Super. Ct. App. Div. Apr. 13, 2021) ("[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence." (alteration in original) (internal quotation marks omitted)); Boursiquot v. United Healthcare Servs. of Del., Inc., 158 N.E.3d 78, 82–83 (Mass. App. Ct. 2020) ("Whether the parties have agreed to arbitrate is a matter to be decided finally by the court and not by the arbitrator *unless there is clea[r] and unmistakabl[e] evidence that the parties agreed to arbitrate arbitrability*." (alterations in original) (emphasis added) (citations and internal quotation marks omitted)); M. Grieco Enters., Inc. v. McNamara, No. PLCV-2019-00989A, 2020 WL 2521215, at *3 (Mass. Super. Ct. Apr. 2, 2020) ("Certainly, the parties are free to authorize the arbitrator to resolve a gateway issue of arbitrability, but an intent to do so cannot be based on silence or ambiguity in the agreement because that might force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide. Thus, questions of arbitrability are delegated to an arbitrator only if the delegation in the contract is clear and unmistakable." (citation omitted)).

Despite focusing its analysis on New York law, the Court takes no position on which state's law should govern Mr. Trejo's substantive challenges to the enforceability of the arbitration agreement. For present purposes, all that matters is that, irrespective of which state's law applies, given the language of the arbitration provision (and the provision's incorporation by

opposed to the delegation provision specifically, his arguments regarding enforceability, unconscionability, validity, and public policy, see [ECF No. 15 at 8–17], must be directed to the arbitrator.  See Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 47 N.E.3d 463, 474 (N.Y. 2016) ("Thus, where a contract contains a valid delegation to the arbitrator of the power to determine arbitrability, such a clause will be enforced absent a specific challenge to the delegation clause by the party resisting arbitration." (citing Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 71–72 (2010))).[5]

### III. CONCLUSION

Accordingly, for the reasons set forth above, Sea Harvest's motion to dismiss, [ECF No. 6], is GRANTED.  The case is DISMISSED without prejudice so that Mr. Trejo can submit his claims to JAMS for a determination as to arbitrability.

SO ORDERED

September 22, 2021                                  /s/ Allison D. Burroughs
                                                    ALLISON D. BURROUGHS
                                                    U.S. DISTRICT JUDGE

---

reference of the JAMS Rules), whether Mr. Trejo must arbitrate his claims is for the arbitrator to decide.

[5] Again, although Monarch Consulting involved a contract covered by the FAA, see 47 N.E.3d at 473, the Court sees no reason why its analysis should not apply equally to a delegation clause contained in a contract exempt from the FAA.